BETH CREIGHTON, OSB #972440
E-mail: beth@civilrightspdx.com
NORA BROKER, OSB #164739
E-mail: nora@civilrightspdx.com
CREIGHTON & ROSE, PC
Suite 300 Powers Building
65 SW Yamhill Street
Portland, Oregon  97204
Phone:   (503) 221-1792
Fax:       (503) 223-1516

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **DEMETRYE WILKINS**, | Case No. 3:17-cv-01099 |
| Plaintiff, | **COMPLAINT** |
| vs. | (Race Discrimination - ORS 659A.030, Title VII, and 42 U.S.C. § 1981; Retaliation - ORS 659A.030(f) and ORS 659A.199) |
| **BRANDMAN UNIVERSITY**, | |
| Defendant. | **JURY TRIAL DEMANDED** |

I.

INTRODUCTION

1.       Pursuant to ORS 659A.030, ORS 659A.199,  42 U.S.C. § 2000e, and 42 U.S.C. § 1981, Plaintiff alleges the deprivation of his rights as protected by state and federal anti-discrimination and anti-retaliation statutes. He seeks damages and equitable remedies, including declaratory judgment and attorney fees and litigation expenses/costs, including expert witness

Page 1  – COMPLAINT

CREIGHTON & ROSE, PC  ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

fees and expenses in an amount to be determined by a jury at trial.

## II.

## JURISDICTION & VENUE

2. This court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367 because plaintiff asserts a cause of action arising under the Constitution, laws, or treaties of the United States. This court also has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy is greater than $75,000.

3. Defendant's principal place of business is located in the city of Irvine, county of Orange, state of California. Defendant owns and operates a business facility in Portland, Oregon, and the events underlying this Complaint took place therein, making venue proper in the District of Oregon, Portland Division.

## III.

## PARTIES

4. Plaintiff Demetrye Wilkins (hereinafter "plaintiff," "Wilkins") is a former employee of defendant Brandman University, and an African American resident of the State of Washington. At all times relevant to the events recited herein, Wilkins was employed by Brandman University in Portland, Oregon.

5. At all times relevant hereto, Defendant Brandman University (hereinafter "defendant," "Brandman") was and is a nonprofit public benefit corporation organized under the laws of the state of California, and with its principal place of business in the state of California. Brandman owns and operates a facility in Portland, Oregon, where Wilkins was formerly

Page 2 – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

employed, most events relevant to this Complaint occurred therein, and numerous relevant witnesses currently reside in Portland, Oregon or its immediate viscinity.

## IV.

## FACTS

6. Defendant hired Wilkins on or about October 13th, 2014, as an enrollment coach, based at defendant's Enrollment Coaching Center ("ECC") in Portland, Oregon.

7. Though Defendant represented to Wilkins and other similarly-situated prospective employees that the job was focused on academic services, the position was in reality a sales-focused call center. Some prospective employees who were lead to believe that their positions involved academic advising soon discovered that their job focused on selling the school to prospective enrollees. Nonetheless, Wilkins was dedicated to his job, and achieved high numbers in terms of ultimate enrollments and registrations.

8. In or about December 2014, Wilkins was subjected to several racially offensive comments by coworkers, including: "You must like basketball, a lot of Black people play basketball," and "You remind me of Wesley Snipes," a Black actor who looks nothing like Wilkins. Wilkins complained to his manager, Chris Larson, about those comments.

9. Following Wilkins' complaint to Larson, Larson spoke to the employees involved. One of those coworkers then confronted Wilkins regarding his complaint. None of the employees were reprimanded or otherwise disciplined, and such comments continued throughout the course of Wilkins' employment.

10. Other racially offensive comments included an instance where Wilkins stepped to

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

the side of a hallway to let a coworker pass, and was told "I hope you're not trying to blend in, because you're so dark." On another occasion, a supervisor showed a video of comedian Kid President, a 9-year-old Black boy, and saying "look, it's baby Demetrye."

11. During the course of Wilkins' employment, employees of color were treated less favorably than white employees. Managers and leadership maintained a "white men's club" atmosphere favoring white employees. White employees were taken to long lunches, invited to work social events such as lunches with upper management, not written up for violation of policies or procedures, permitted more lax or more preferable work responsibilities, allowed to "shoot the breeze" with supervisors while on the clock, allowed to miss work without write-ups where other employees were scrutinized, given raises more frequently and/or to greater degrees than employees of color, and promoted over employees of color.

12. Several Black coworkers of Wilkins' expressed concern to human resources about being the target of racially offensive comments and unfavorable treatment compared to their white coworkers. Defendant never addressed these complaints or the underlying conduct, which eventually lead to the resignation of several Black coworkers.

13. In or about June 2015, Wilkins began receiving negative performance evaluations directly following his critique of an employer program, apparently in response thereto. Specifically, supervisors began implementing "morale boost" programs to increase productivity, including various games. Thereafter, in a one-on-one meeting with supervisor Laura Hoff, Wilkins was directly asked for his opinion of these games. He replied that they seemed "foolish." The next day, he received his first "performance" write-up. White employees were not similarly

Page 4 – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

treated for expressing opinions on the program.

14.     In or about August 2015, defendant gave Wilkins a write-up. At that time, Wilkins raised his concerns with defendant about being treated differently than white coworkers. As a result, defendant revised the allegations on Wilkins' performance write-up to remove one of the issues he had complained of as unfair.

15.     During Wilkins employment, Caucasian employees engaged in threats and/or joked about violence with impunity from ECC management. For example, a white woman, jokingly threatened her coworkers with specific acts of violence. She often stated that she would kill her coworkers, including frequently saying "I'm gonna slit your throat" to fellow employees. Sometimes, while making these comments, she would draw her hand across her neck in a throat-slashing gesture, simulating a knife drawn across the throat. She engaged in this conduct on a routine, even weekly basis, and engaged in this behavior in front of ECC managers on several occasions. Defendant never took disciplinary action against her for this conduct.

16.     On or about January 27, 2016, between 8:30 a.m. and 9:00 a.m., Wilkins was working in his cubicle and talking to his coworker. This coworker leaned in close to Wilkins to share something private. Another coworker, who worked in the information technology department, walked by and asked what they were talking about. In an overtly facetious tone, Wilkins joked "I have a bomb." The coworker laughed and said "let me know so I can get out of here." Wilkins then showed his coworkers the inside of his bag and opened his desk drawers, just to make sure they knew he was merely joking.

17.     Later that same day, at or about 1:45 p.m., two police officers came in and spoke

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

with Larson. The officers then spoke to Wilkins in a private room, and asked if he had made a bomb threat. Wilkins told them that it was a joke, and agreed to let them search his personal belongings and work area. The officers agreed that Wilkins posed no threat. However, Wilkins was immediately placed on leave, and on Brandman's instruction, Wilkins was escorted from the building by the police officers.

18. That day, Larson told staff at the ECC that there was a bomb threat and that if they didn't feel safe, they could go home. A supervisor claimed that Wilkins had threatened to "bomb the building at 3 p.m." The office employees all left.

19. A Brandman employee who witnessed the joke was interviewed by upper management, testifying that he did not feel threatened by the joke, and that Wilkins was incapable of doing such things.

20. On or about February 3, 2016, defendant terminated Wilkins' employment. Defendant claimed to be acting on a policy of "zero tolerance for actual or threatened violence," despite the fact that it did not enforce such a policy against any of Wilkins' white counterparts. Brandman did not cite any performance issues it its termination letter.

21. Based on information and belief, informed in part by the events recited herein, Wilkins believes that he was terminated for pretextual reasons, because of his race, and in retaliation for complaints of racial discrimination in his workplace.

///

///

///

Page 6 – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

## V.

## CLAIMS

### FIRST CLAIM FOR RELIEF
### Race Discrimination
### ORS 659A.030(1)(a) & (b); 42 U.S.C. §2000e-2 (Title VII); and 42 U.S.C. § 1981

22. Wilkins re-alleges and incorporates paragraphs 1 through 21 above.

23. As herein described, defendant subjected Wilkins to a hostile work environment and discriminated against Wilkins in the terms and conditions of his employment, in violation of ORS 659A.030(1)(a) & (b), 42 U.S.C. § 2000e-2, and 42 U.S.C. § 1981. A substantial factor in defendant's actions was Wilkins' race, a status protected under the pertinent statutes.

24. Defendant's actions caused Wilkins to incur economic damages for lost wages and benefits in amounts to be determined at trial.

25. Defendant's actions caused Wilkins to incur emotional distress and suffering in an amount to be determined by a jury at trial.

26. Wilkins is entitled to a declaration that defendant violated his rights under ORS 659A, Title VII, and 42 U.S.C. § 1981, and an order requiring defendant to take appropriate steps to make him whole.

27. Wilkins is entitled to equitable relief, including but not limited to reinstatement, or future lost wages in lieu thereof.

28. Wilkins is entitled to his attorneys' fees and costs pursuant to ORS 659A.885, ORS 20.107, 42 U.S.C. § 1988, and/or 42 U.S.C. § 2000e-5(k), if appropriate.

//

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

## SECOND CLAIM FOR RELIEF
### Retaliation for Opposing Discrimination
### ORS 659A.030(f), ORS 659A.199, and 42 U.S.C. § 2000e-3 (Title VII)

29. Wilkins realleges and incorporates paragraphs 1 through 21 above.

30. As described above, defendant violated ORS 659A.030(1)(f), ORS 659A.199, and 42 U.S.C. § 2000e-3 by discriminating against Wilkins in the terms, conditions, and privileges of his employment because he opposed unlawful employment practices.

31. Defendant's actions caused Wilkins to incur economic damages for lost wages and benefits in amounts to be determined at trial.

32. Defendant's actions caused Wilkins to incur emotional distress and suffering in an amount to be determined by a jury at trial.

33. Wilkins is entitled to a declaration that defendant violated his rights under ORS 659A and Title VII, and an order requiring defendant to take appropriate steps to make him whole.

34. Wilkins is entitled to equitable relief, including but not limited to reinstatement, or future lost wages in lieu thereof.

35. Wilkins is entitled to his attorneys' fees and costs pursuant to ORS 659A.885, ORS 20.107, 42 U.S.C. § 1988, and/or 42 U.S.C. § 2000e-5(k), if appropriate.

## VI.

## REQUEST FOR RELIEF

Plaintiff Wilkins prays for his costs and disbursements incurred herein and for the following in accordance with the proof at trial:

Page 8  – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

a. Economic damages;

b. Non-economic damages;

c. Future lost wages;

d. Reasonable attorneys' fees and costs;

e. A declaration that defendants violated Wilkins' rights and an order requiring defendants to make him whole;

f. Prejudgment and post-judgment interest as appropriate and allowed by law;

g. On all claims, as applicable, amounts necessary to offset the income tax consequences of receiving a lump sum payment, rather than receiving a payment of wages over the applicable time frame; and

h. Any and all other relief as this court may deem proper.

Respectfully submitted,

Dated this 14th day of July, 2017        CREIGHTON & ROSE, PC

   *s/ Beth Creighton*
Beth Creighton, OSB No. 972440
beth@civilrightspdx.com
Nora Broker, OSB No. 164739
nora@civilrightspdx.com
Attorneys for Plaintiff
300 Powers Building
65 S.W. Yamhill Street
Portland, Oregon 97204
**JURY TRIAL DEMANDED**        (503) 221-1792

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

Page 9 – COMPLAINT